Which is Jose Santos Mejia, etc. v. Jefferson B. Sessions, etc. Hear first from Mr. Greff. Yes, my name is Kai de Greff. I am the attorney for Jose Santos Zavala Mejia. Mr. Mejia is a 32-year-old man currently living in New York. He entered the United States originally on August 30, 2004. He was apprehended at Eagle Pass, Texas, attempting to enter without inspection. The record of the appeal proceeding at page 41 reflects the nature of that encounter. It's the form I-213, which document is commonly used along with the notice to appear, the charging document, to substantiate the charges that are being lodged against a respondent in removal proceedings. During that encounter, it's documented in the I-213 on page 481 specifically that the attending ISO officer, the arresting officer, confirmed the respondent, I'm sorry, Mr. Mejia, instead of respondent in removal proceedings, but confirmed Mr. Mejia's address by speaking with Ms. Petrone Mejia, Mr. Mejia's mother. She lived in New York at the time. The ISO officer said, we have your address, ma'am, at such-and-such Terrace Avenue. Oh, yes, I just moved there, and she says so in her accompanying affidavit that was filed along with the motion to reopen that was ultimately filed with Judge Burkholder in San Antonio, Texas, in 2014. Mr. Mejia had resided in the United States unlawfully until such time that he was deported in 2010. So why didn't he challenge this lack of notice in 2010 when he was deported? That's a good question, Your Honor. He reveals to me that the lawyer didn't do anything, and the seconds were ticking, and it was all quite blurry to him. Everything moved very fast. He was picked up. He was transferred over to ICE by local law enforcement after a traffic stop. I think they said that he had his traffic, his stoplight was out or something of that sort, and he was sent back home. He attempts to set up a business back home. And after he sets up the business— Let me ask, and I think his failure to challenge it in 2010, and he was deported pursuant to that original removal order, which you say he lacked notice for, but there might be some jurisdictional problems because he was already deported. But first let me ask, what's the endgame here? Because let's say you're right that there was improper notice. Let's assume you win that, and you get to reopen the initial hearing. I mean, I don't see—I mean, he's here without status. I don't think there's any argument about that. So aren't you back just arguing, well, asylum and withholding of removal and convention against torture, which most of those arguments you're still able to make hearing? What does it get you if you can reopen the hearing? Or to look at it another way, what was the harm of the lack of notice since he had no defense that I see that he was removable? Thank you, Your Honor. Thanks for asking that question, Judge Costa. The endgame here is to apply for asylum under 208. Under 208, the burden of proof is 10 percent, according to our established Supreme Court precedent, as mentioned in my brief, whereas under the withholding statute in 241 and or CAT, Convention Against Torture Relief, your burden of proof is much higher. It's 51 percent, if I'm not mistaken. It's more probable than not. Now, in immigration— In New York, because you have a case pending up there, too. Yes, Your Honor. He's trying to get withholding of removal. If you reopen, he can get asylum, and that's the endgame. That's it. That's absolutely right. Judge Chu, a seasoned immigration judge who's been on the bench for many, many years, decades, if I'm not mistaken. I started appearing before him in the late 90s. Judge Chu has found reasonable fear of persecution, having vacated an AO, an asylum officer decision, not finding a reasonable fear. And Judge Chu's case is currently pending. Now, if we can reopen this proceeding, this case, his asylum application, will, of course, be joined. Venue will be changed over to New York, where Judge Chu will be able to hear the 208 application. And again, he's already found that Mr. Mejia has a reasonable fear of return. I saw that, but I looked at your Second Circuit brief, and in the Second Circuit, which it got dismissed once there was that reasonable fear determination, because they said, let's wait to see what happens with the withholding. But in the Second Circuit, you were also challenging this same notice issue you're raising here, saying he didn't have notice of the original hearing. How can you get two bites at the apple? How can you challenge the notice here and in the Second Circuit? Your Honor, it was never our intention. We had filed the motion to reopen before ICE had issued the reinstatement order, and it was never our intention to be dipping in two baskets at the same time. We were forced into a procedural corner, if you will, and we had to respond accordingly. We had no choice other than to apply for withholding based on the circumstances of Mr. Zavala Mejia's life, and while our motion proceeding was pending here in this circuit. So here the IJ and the BIA rejected your argument about notice. They said it was your client's responsibility to mail it in. That's correct. If we were to uphold that, would that then have preclusive effect in the Second Circuit on the notice issue? That would put us back into the withholding only proceeding that is currently before Judge Chu, and it would be withholding only. And so as our end game is to try and apply for asylum under 208, where he has a better chance given the respective burden of proof, we feel that it is highly prejudicial. Moreover, as I pointed out in my brief, Judge Costa, the withholding statute, when you get an order of withholding, you get a removal order. You're ordered to remove from the United States. The order is withheld. In other words, removal is actually withheld. ICE can't deport you unless they reopen and find new country conditions. You do not get permanent residence ever. You cannot leave the country, so you're not allowed to travel without self-executing that removal order. That's a serious legal predicament. So the consequences are significant, and as you see in our brief also, it's our contention that Judge Berkholder had failed to recognize this distinction when he made the statement that he would deny the motion and the exercise of discretion because Mr. Mejia is not prejudiced. He can apply for the same relief. So reasons Judge Berkholder. But it's clearly not the same relief, and to the extent that Judge Berkholder erred on that ground in determining whether or not he would exercise favorable discretion, we believe that the agency should revisit that issue. The board never reached it, as you can see. They said it's not prejudicial because he hasn't established new country conditions, so we don't even need to address the discretion issue. Yes. Well, my first question was why he didn't challenge the order back in 2010, the original removal order. And it seems to me the failure to do that means there's no jurisdiction to reopen that original proceeding now, and 1231A5 that the government relies on says a prior removal order, once someone's been removed and then comes back and there's a reinstated order, which now there's a reinstated order, it says the prior removal order is not subject to being reopened or reviewed. The alien is not eligible and may not apply for any relief under this chapter and shall be removed under the prior order at any time after the reentry. So how can you why does the original order really have any legal effect? It's all the reinstated order that is having legal effect now, and that's what you're challenging in New York. So why do we even have jurisdiction here? It's our assertion that the original order only affects the outcome if it's actually reinstated. Number two, it's a Well, you can both in our circuit and I'm sure in the second. In challenging the reinstatement order, which you're doing in New York, you can bring in limited circumstances a collateral attack as part of that on the original order, but with the goal of undoing the reinstatement order, because the reinstated order is what they're trying to remove your client on now. Yes. But what do you have any authority that allows you to actually reopen or direct or directly challenge the original order when it's it's it's it's already been effectuated back in 2010? Well, yes, Your Honor. First, as we're pointing out, there was no legal basis for the order in the first place due to the lack of the hearing notice. But two, we believe that 241, as as you've brought me to point out, is intention with that section of 208, which allows anyone at any time to file an asylum application based on new country conditions. Anyone at any time can file for asylum based on new country conditions. So it's hard to see. It's it's hard to I don't know if the I don't see anywhere where that issue has actually been resolved yet. That that section of 208 is clearly at odds with 241 or that section that you just cited, Your Honor, indicating that it can't be reopened. No relief shall be afforded, et cetera, et cetera. Which which, again, we only really believe is operative if it's been reinstated. Yeah. I mean, that's how that that's how I read it. But of course, the court will have a different opinion on it very possibly. On a new country conditions, which you brought up is the key to the asylum. If you can get even get through the jurisdictional problems, what you have a bunch of record evidence about how bad things are in Honduras. Yes, I've seen all that. What's your best evidence you can point us to of how they've gotten worse since his to show the changed conditions since his last entry? Well, the State Department reports from 2014, which are in the record, as well as the voluminous articles that we've submitted showing how the Mara Salvatrucha, both the 13 and 18 sections have virtually taken over the country and require its citizens to cooperate with a corrupt. Just it's it's just it's a it's a whole political, social, economic system seething with corruption and payoffs and murder. Honduras is now this year, according to the UN, the murder capital of the world. It has the highest murder rate of all countries in the world. I mean, that's more than other countries that might. That's more than Syria. That's more than other countries that might regularly come to our mind when we think of that statistic. It's brutal to have to live there. And that's certainly different than the situation that existed in 2004. I think that's readily apparent from the record. Now, there is a massive meltdown in Honduras just in the last few weeks. If you according to that mother of all newspapers, the New York Times. I mean, increasing lawlessness in Honduras at the moment is just epic. Which is which has only become more unstable. I just watched the report last night due to the pending election results and all of this. It's it's just I just don't know how people could ever cope. I have many people that I speak with every day. I know it's not in evidence, but they come in and they cry because their family members are getting murdered. The same is true for El Salvador. This is a real situation that I don't know if any of us know how to deal with it. But certainly where it affects these applicants, we have to on a case by case basis, look at what happened, evaluate the evidence and decide the case according to the statute and the regs. Now, I'd like to speak, if I could, about the material that Ms. Workman, thank you so much, had brought to the court's attention, this court's recent decision in Hernandez Castillo v. Sessions, just decided last month, about three weeks ago. But I'd like to point out the differences, if I could, and also point to one specific statement made by Justice Alrod in this decision that she authored. And that is that she she specifically stated and specifically used the words DHS. She said that Mr. Hernandez Castillo at no time provided notice to DHS, Department of Homeland Security. His address and contact information. That is clearly distinguishable from the situation we have here, where his address was articulated at the time the original I-213 was created, and during that operative period during which the in absentia order was issued. So under a precedential decision of this court, the judge in that decision is specifically addressing the failure of this litigant, Mr. Hernandez Castillo, to provide DHS with that information so as to enable proper hearing notice. And I think that that's quite notable. I think that's very, very notable. I'd also like to say that it's really for the agency to come up with a proper mechanism to allow the immigration courts to be informed of a change in address if one occurs. And they have. They do it on EOIR-33. It's a change of address form. But in this case, and perhaps in other cases, and as I've argued in my brief, that the board is construing in an overly strict fashion this court's decision in Gomez-Palacios, sort of this absolute requirement that you have to at all times use that form, essentially, in order to inform the immigration court of your address. But that is used for a change of address. And so at no point did Mr. Zavala Mejia change his address, Your Honors, following his release from detention on August 30, 2004. If they need, if the EOIR wants all litigants or all respondents in removal proceedings to inform them of the change of address, then they might come up with some other regulatory mechanism, maybe a different form that would allow people to do this. But up to now, there is no form. And very frankly, I sort of do everything under the sun that's immigration. But I've litigated well over 100 cases in immigration court, both detained and non-detained. And unless the person, unless you've changed venue, the immigration court already has the address because that information has been forwarded to the court by DHS. That information is already in the record. And so the question that I get when I'm first on with the immigration judges, is your client's address still 64 Fulton Street, New York, New York, 10038? Yes, Your Honor. There's been no change. And I just like to point that out as a matter of practice. If they insist on the strict reading, then they should come up with a different procedure that enables these respondents in removal proceedings to report an address. Here, I just don't see how this judge could have issued a removal order in absentia without at least looking at the I-213 and, hmm, we seem to have an issue here. I mean, you have an address here, counsel. Have you sent, I mean, have we sent any notice to this address over here on Terrace Avenue? No? Well, I'll tell you what. Let's send a notice to this address that you guys have uncovered in this 213 investigation and let's see what we get. Maybe we'll get the guy here for the next hearing, at least one other hearing. So it's kind of hard to see under those circumstances how an absentia order could be issued. I frankly do. I just, oh, I'm out of time. I'm very sorry. You have some time on rebuttal. Ms. Workman. May it please the Court, Claire Workman for the Attorney General. This Court should deny the petition for review because the agency acted well within its considerable discretion in denying Petitioner's motion to reopen and rescind his in absentia removal order. First, the agency reasonably found that after having been personally served with the notice to appear, Petitioner failed to provide the immigration court with his mailing address in writing such that he was not entitled to notice of his hearing. Second, the agency also did not abuse its discretion in finding no evidence of materially changed country conditions in Honduras so as to exempt his motion to reopen from the time requirement. Lastly, this Court lacks jurisdiction to review the agency's decision not to reopen his case sua sponte. And even if this Court finds that there was an abuse of discretion with either the agency's notice or changed country conditions findings, remand would be futile because Petitioner's order has been reinstated and by statute it cannot be reopened and he is precluded from applying for asylum. So what's the government's position on whether we have jurisdiction to even consider this whole motion to reopen and the notice issue given 1231A5? The government's position is that the Court does have jurisdiction to review how the Board went ahead and addressed the motion on its merits. If, though, the Court concludes that the Board abused its discretion, it just simply would be futile to remand because for asylum he is barred from that and then in terms of withholding a removal and cap protection, he already has full rights in parallel proceedings that are pending in New York. So if the Board had— that when there's a prior order of removal that's been reinstated, which has happened here, that then the prior order is not subject to being reopened or reviewed. Yes, Your Honor. So— That's what he's trying to do. He's trying to reopen it. Yes, Your Honor. So if the Court wants to—I mean, the Court has jurisdiction to determine its own jurisdiction. If the Court believes that it does not have jurisdiction to review the motion on that basis, then the government would not have a problem with that. Well, you ought to—pardon me, but you ought to be very clear on that because this is a major issue for your agency. We either have jurisdiction or we don't. So your answer is we have jurisdiction. Yes, Your Honor, because the Board— Okay, well, that means you and I see it differently because I don't think we do. But—and that's—it's an important issue for your agency, right? Yes, Your Honor. This is the government's position. So the Attorney General's position here is that this Court has jurisdiction. Because of how the Board went ahead and addressed the case on its merits. If the Board had decided that it lacked jurisdiction because of the bar from the reinstatement order, then this Court would also review that decision and find that it also would not have jurisdiction because— well, it would have jurisdiction to review that order, but it would, as it has in an unpublished case, find that the Board acted correctly in dismissing for lack of jurisdiction. Okay. Got it. I mean, it's clear to me. Our case law says, Ramirez-Molina and some other cases, that if he were challenging the reinstatement order itself, as he's doing in Second Circuit, then there is a limited way in which he can try to challenge the underlying order, make a collateral attack on the underlying order. But what authority do you see that allows you to directly reopen or challenge the underlying order as opposed to challenging the reinstatement order? Because the reinstatement order is the only thing that's causing his client to face removal right now. I mean, that's what has legal effect. The old order, it's been executed in 2010. It's actually not having direct legal effect right now. That's correct. It's a nullity, isn't it? Well, in his reinstatement proceedings, once they are concluded in terms of he's now withholding only proceedings, so let's say that he is denied withholding of removal and CAT protection, and, of course, he can appeal that to the Board, and then if he, again, if his appeal is dismissed by the Board, he can, of course, petition for a review before the Second Circuit. And he can challenge the denial of withholding of removal and CAT protection. And also very limited, there are three things he can challenge with respect to the reinstatement order. And the Second Circuit has case law that it does not entertain a collateral attack on an underlying order in reinstatement proceedings. Where a petitioner has made a due process challenge, it found that that petitioner had not exhausted his administrative remedies, and also it found no prejudice. So you don't think he would be able to challenge the lack of notice in the Second Circuit? Because I read his Second Circuit brief. He's certainly trying to. That was in his Second Circuit brief, the same lack of notice argument we just heard here. And that's correct. I do not believe that he would be able to challenge that in the Second Circuit. He can only challenge the three predicate of facts underlying the reinstatement order, which is that the alien was subject to a prior removal order, that he was, in fact, the alien who was previously removed or who departed voluntarily under an order of removal, and that he unlawfully reentered. It just seems to me the statute that says we can't, once there's a reinstated order, you can't challenge or reopen the underlying order. It makes sense in that, I mean, 2010 was his opportunity to say he had no notice. I think 2010 is when he finally got deported on the original order of removal. So that statute is saying, look, you can't. I mean, we could be 20 years down the road, and if you're allowed to every time you get a reinstated order challenge the original order, you're so far removed from these facts about who had what address and what did the mother say. I mean, there's, you know, how do we sort that out years later? And you're right, Your Honor, to point that out. The reason the government makes the distinction here is that so he here filed a motion to reopen, challenging lack of notice. So that is a separate final order from what he may eventually seek review of in the Second Circuit, the final order of the reinstatement with its associated proceedings. So if the court, I suppose, would want the board, the board has not in a published decision reconciled the statutory right to reopen and rescind an inabsential order for a legitimate lack of notice claim and the 1231A5 bar that once an order is reinstated it cannot be reopened or reviewed. So if this court wanted the board to do that, then it could theoretically remand for that reason or it could decide the issue on its own. But that is why because the board went ahead and gave him the benefit of the doubt, went ahead and gave him more process than he was due, arguably, because it could have just said, well, the reinstatement order was issued and therefore we cannot reopen this case. It has done that in unpublished decisions. I do not know why it did not do that here. But I do want to correct a misstatement that opposing counsel said about the reinstatement order. He said that the motion to reopen was filed before the reinstatement order was issued, and that is incorrect. He said that the reinstatement order was issued on June 26 of 2014. His motion to reopen was filed on October 27, 2014. Now, he makes a claim that he did not get service of that order, which I believe there are some issues with that argument. But it doesn't matter in the end because once the order is reinstated, the statute takes effect and the underlying removal order cannot be reopened. And also the claim that with respect to 1231 being in tension with Section 208 of the Immigration and Nationality Act, the asylum provision, this court has rejected that argument in Ramirez-Mija, which we cited in our brief. Ultimately, with respect to the notice issue, the statute and the regulations are clear that no notice is required if an alien does not provide, and this is a quote, a written record of an address, which is mandated by 8 U.S.C. Section 1229A1F, and Petitioner has never claimed, and there is no evidence in the record, that he provided an address in writing, either with Form ER-33 or in any other way, before his in absentia order was issued. So he did not comply with his statutory and regulatory obligation. And it's undisputed that Petitioner was served with the notice to appear, which on its face shows that he did not provide an address and informs him of his address obligation and that the government was not obligated to serve a hearing notice if no address was provided. Additionally, by regulation, it was Petitioner's duty, when there is a missing address on an NTA or an incorrect one, he has the obligation to provide, again, this is a quote, a written notice of an address to the immigration court. And the notice and the address requirements are intended to ensure that the alien will appear for his hearing, and he is in the best position to know his address. So the written requirement is key because otherwise there could be, as in this case, conflicting accounts of what was said to whom and when, and there's a lot of ambiguity that a written address requirement resolves. Petitioner is essentially trying to fault DHS for not doing the work for him in terms of providing his address, but DHS was under no obligation to do so. Nothing requires DHS to choose among conflicting addresses, and I also take issue with Petitioner's description of the I-213 because it does not say that DHS confirmed Petitioner's mother's address. It simply states that a Border Patrol agent called Petitioner's mother and asked her an address. She provided one address and that the address of record was another address. It does not indicate that she was ever confronted with that address or that she confirmed it or that Petitioner was living with her. But in any event, it still comes back to the fact that Petitioner did not provide an address in writing to the immigration court at any time, and he had that notice to appear, which told him that the hearing notices were going to be sent to that address, and there's no address on that form. So he was on notice that he needed to provide an address to the court, even if he thought he had already provided one. Didn't he say at the time, talk to my mother about it, or he gave it to her? Yes, Your Honor, he did. But again, that just highlights the problem of providing an address, or in this case a phone number, orally. It still comes back to it's his obligation to inform the immigration court or ensure that it has the continuing obligation to ensure that it has a current address for him. Because ICE is under no obligation to call a phone number. It does so as a matter of courtesy. It wants to ensure that an alien appears for a hearing as well. But it doesn't have to call up a number and try to track down an address for an alien who does not provide a written address. With respect to the changed country conditions claim, there is no abuse of discretion that he did not show materially changed country conditions since 2004 to overcome the time limitation, because he does not point to any evidence in this record that conditions have changed that are qualitatively different from how they were in 2004. In fact, I don't see any evidence of conditions in 2004, and it was his burden to provide that evidence. So it's very difficult to make a comparison when there is no evidence of how conditions were at the time of his hearing. And the fact that he argues in his reply brief that an immigration judge in New York found he had a reasonable fear, he says that means he established a prima facie case for asylum, but he ignores that he still has, in the motion to reopen context, the obligation to show changed country conditions to overcome the time bar for a motion to reopen. And Petitioner's other arguments are unavailing. There is no jurisdiction over the agency's decision not to reopen Suas Ponte. The agency, the board, declined to review the immigration's decision not to reopen in its exercise of discretion, so that is not before this court. To the extent he makes a due process claim, there is no libertary interest in the discretionary relief of reopening, and the court need not reach the arguments on the merits of the eligibility for relief from protection because the agency's finding that this motion to reopen was untimely and not excused by a lack of notice claim or a changed country conditions claim, that finding is dispositive. And in any event, of course, the remand would just be futile if the court disagrees because he cannot get asylum and he already has pending proceedings for withholding of removal and cap reduction. If there are no further questions... The board acted well within its broad discretion in rejecting both of Petitioner's bases for seeking reopening, and this court should deny the petition for review. Thank you, Ms. Workman. Thank you, Your Honor. Mr. Graf, you have five minutes on the vote. Thank you, Judge Fenton. I'll be much more quick. We can, in the second, at least, circuit, challenge the reinstated removal order on account of the fact that the original order was not validly issued, I believe, as a matter of law under the jurisprudence of that court. But I think the essential point I would like to make here, and the government even went there, and that is the fact that we actually received the notice of intent to restate after we filed our motion to reopen. And so if the operative language of the statute is precluding trying to do something about the original order, which can be filed pretty much at any time if you meet certain conditions, as long as the case has not been reinstated, then that's exactly what we did here. It makes... I get things all the time from DHS, and they put a date on it, but they might wait 20 days or a month or two months before they send it to me. How can anyone reasonably have any hope of responding to something unless they get it? They have to get it first. So it really should be the operative date, as I've cited in my brief, the operative date should be the date at least that it's served, and certainly we would argue the date that it's received. Number two, it seems to me that the I-213 readily indicates that the mother was contacted and she provided an address, but that further, and this is corroborated by her conversation, public records, it's stated right in the 213. Public records indicated that she lives on such and such an address, and the address is very clear and very specific. There is a definite address there. It's very, very clear in the record. I would like to... Yes, those are the two points that I would like to make. I know I've argued pretty much every other point that the government has addressed. I don't believe I have anything to add to that. Only that in terms of the discretion to deny a motion to reopen where it's purely discretionary relief, it's not. Withholding is not discretionary. It's a must-or-not situation. If you find these conditions, you cannot remove. That's not discretionary. Discretion has absolutely nothing to do with it. But we're, of course, insisting, as you know, that my client deserves an asylum hearing. And on the notice issue, Your Honor, I agree with the government. The agency, if the court finds, well, there's an issue here with respect to what happened first, this court under Supreme Court precedent isn't authorized to decide the issue in the first instance. The agency is. So a remand would be in order at least to determine this issue, which was not relied upon by the BIA in denying the motion to reopen, as counsel for the government points out. Thank you very much for your time today. Thank you, sir. And have a good one. Bye.